# Richmond

E. M. BRAGG, ADM'R, ETC. V. THE FEDERAL RESERVE BANK.

March 14, 1935.

Present, All the Justices.

The opinion states the case.

*George E. Allen,* for the plaintiff in error.

*Maxwell G. Wallace,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error brought an action of detinue against the defendant in error to recover certain liberty bonds alleged to have been in the latter's possession. The Federal Reserve Bank claimed to be the holder in due course of the bonds. At the conclusion of the testimony offered by both sides, the court sustained a motion of the defendant to strike out all of the evidence of the plaintiff and thereupon the jury returned a verdict in favor of the defendant, upon which the court entered judgment.

The parties are referred to as plaintiff and defendant, the respective positions they occupied in the court below.

W. J. Bragg, the plaintiff's decedent, was in his lifetime the owner of liberty bonds of the par value of $1,500 and

sometime between 1921 and 1925, he deposited them with the First National Bank of Victoria and received from the bank a certificate of deposit which was written upon a form provided for such purpose. The original certificate of deposit is not in evidence but it is conceded that it was similar to the following blank form:

"U. S. BOND CERTIFICATE OF DEPOSIT

"THE FIRST NATIONAL BANK   No. 314
     OF VICTORIA
                    "VICTORIA, VA.,............192
   "This certifies that .................... has deposited in this bank ............................ dollars (par value) in U. S................ liberty loan ............. % coupon bonds, returnable after thirty days notice to him or to his order at this bank on surrender of this certificate properly endorsed.
   "Interest payable hereon in lieu of the interest on such bonds according to the terms and tenor of such bonds. Interest due .....................

.........................
                      "Cashier."

At the time the bonds were left by Bragg at the First National Bank of Victoria and up until his death in July, 1930, he was a stockholder and director in the bank and attended meetings of directors regularly. Mr. Bragg had a safe deposit box in the bank and carried the key to the box in his pocket.

On June 1, 1925, the bonds were delivered by the First National Bank of Victoria to the Federal Reserve Bank as collateral for a loan made by the latter bank to the First National Bank. Since that time the Federal Reserve Bank has always been, and is now in the possession of the said bonds. They are now being held as collateral for a $3,000 loan made on April 24, 1930, which was from time to time renewed until February 4, 1932, at which time the First National Bank was closed and a receiver was appointed.

In the application for the loan, which was made upon one of the regular printed forms, appears this language in print:

"The securities pledged as collateral to this note have been borrowed by the bank and are so carried on its books." The application is signed by the First National Bank by L. D. Hatch, the cashier.

The evidence discloses that it is common banking practice for a bank to borrow securities of individuals or corporations and to use them as collateral for the purpose of obtaining additional funds when necessary. The evidence further shows that such securities are carried on the books of the bank as borrowed securities; that in this case the bank carried the bonds here involved upon its books as borrowed bonds; that securities received by a bank for safekeeping are not carried on the books of the bank as an asset; that the Comptroller of the Currency recognizes the practice of banks borrowing securities by providing forms to be used by examiners, which forms have as one item of liability, "bonds borrowed"; that bonds delivered to a bank for safekeeping only are not listed under the account known as "bonds borrowed," and that bonds and other securities delivered under such conditions and under such a certificate as the one here described are usually used when needed as collateral by the bank if it desires to increase its cash funds.

The plaintiff contends that the Federal Reserve Bank is not a holder in due course of the bonds but that the relationship between Bragg and the First National Bank was that of bailor and bailee respectively, and that the said bank received and held the bonds only for safe-keeping and in a fiduciary character.

The defendant contends that the certificate of deposit issued by the First National Bank to Bragg, by its terms construed in the light of the conduct of Bragg and the cashier of said bank, indicated that said bank had the right to treat the bonds as borrowed bonds and to use them as collateral in accordance with the ordinary custom of banks with reference to borrowed bonds, and that the defendant in lending on these bonds acted in good faith even though it knew that the bonds were borrowed bonds.

There are certain significant facts which show clearly

that the bonds were not deposited by Bragg with the First National Bank only for safekeeping. The certificate does not specify any particular bonds but that Bragg has deposited bonds of the par value of $1,500. Another fact of importance is that the certificate required Bragg to give the bank thirty days notice if he desired the bonds returned to him. In addition, in the certificate is the provision for the payment of interest, not upon the bonds but upon the certificate itself. When we also consider the fact that Mr. Bragg was a director in the bank, having access to its books, regularly attending directors' meetings and that he had a safe deposit box in the bank to which he carried the key in his pocket the conclusion is inescapable that he did not leave the bonds with the bank for safekeeping.

The certificate, failing to specify any particular bonds deposited but specifying them in amount only—that is, of the par value of $1,500—would have authorized the bank, if called upon by Bragg, to deliver to him any liberty bonds of that particular issue and value. The bank would not have been required to deliver to him the identical bonds he had deposited with it in the first instance.

The provision for thirty days notice in event Bragg desired the bonds returned to him would have been entirely unnecessary if the bank was to keep the identical bonds on hand, separate and apart from its assets. But if it were contemplated that the bonds were to be used as collateral then the provision for thirty days notice in order to give the bank time to get the bonds or others of like character is consistent with the idea that they were borrowed bonds. The thirty days notice was required in order that the bank would have sufficient time to comply with the terms of the certificate regarding the delivery of the bonds.

If the bank was to hold the bonds merely for safekeeping no provision for interest was necessary. Bragg could have, in that event, collected on the coupons. The provision in the certificate for the payment of interest on the certificate and not on the bonds shows clearly that it was not contemplated that the bank would keep the bonds on hand.

L. D. Hatch, the cashier of the First National Bank testified that Bragg left the bonds with him for safekeeping, but that when the First National Bank was not borrowing on them, they were in the possession of the Federal Reserve Bank; that Bragg did not know that the bonds had been pledged for a loan; that he did not give the bank or the cashier authority to pledge the bonds unless it was expressed in the certificate and that the certificate expressed the entire agreement. The foregoing portion of the cashier's testimony is so inconsistent with that portion which we will now refer to that it can hardly be said to be of any probative value. He later testifies that the bonds were carried on the bank's books as borrowed bonds and were so reported in the annual reports of the condition of the bank; that the books did not show them to be kept for safekeeping only; that he considered he had a right to borrow on the bonds and pledge them because the national bank examiner told him he could do so; that he did not tell the officers of the Federal Reserve Bank that he held the bonds only for safekeeping; that for securities held for safekeeping he, as cashier, gave the owner a *receipt* and they were carried on the books as held for safekeeping, but in case the bonds are borrowed they are carried as an asset of the bank and offset by the liability for the *certificate of deposit* which the bank issues when the bonds are borrowed.

From the foregoing it is seen that the cashier in one instance says he received the bonds for safekeeping only, and in another he says they were borrowed bonds, and in still another instance he signs an application for a loan from the defendant in which he represents the bonds pledged for the loan as having been borrowed by the First National Bank. His testimony is of little value in determining what actually took place when Bragg deposited the bonds at the bank. Its strength is destroyed by its inconsistencies and contradictions.

In final analysis, the transaction as shown by the uncontradicted evidence, is that the Federal Reserve Bank, in good faith, made a loan to the First National Bank on the

bonds here in question; that the Federal Reserve Bank knew the bonds were borrowed bonds but it did not know from whom they were borrowed nor did it know of any bailment, if one existed, between Bragg and the First National Bank; that under a common banking practice a bank often borrows securities from individuals or corporations for the express purpose of using them as collateral for loans from the Federal Reserve Bank and that such a transaction carried out under such an ordinary custom, without more, cannot be said to be done in bad faith.

Justice Hudgins speaking for the court in *Moore* v. *Potomac Savings Bank,* 160 Va. 597, 169 S. E. 922, 925, 91 A. L. R. 1133, said: "The test in Virginia, and in the majority of the states, is not whether the plaintiff was negligent in acquiring the notes, but whether or not he acted in good faith. If the facts and circumstances of the transaction are such that bad faith may be inferred, it then becomes a question for the jury."

Applying that test to the case at bar we find that there is no fact or circumstance of the transaction which shows any bad faith on the part of the Federal Reserve Bank, nor is there any evidence in the record from which an inference of bad faith on its part can be reasonably drawn.

The judgment is affirmed.

*Affirmed.*